MOSES A. BENDETSON v. WATSON D. MOODY.    100  553
136  ³663

*Fraudulent conveyances—Evidence—Conduct of counsel.*

1. Plaintiff brought trover against the defendant, as sheriff, for a stock of goods, which defendant had attached, after their sale and delivery to the plaintiff, at the suit of the vendor's creditors. On the trial the defendant introduced testimony tending to show that the vendor was intoxicated at the time the stock was gone over and the sale concluded; that he took but little part in the matter; and that after the levy of the attachment, and the commencement of the trover suit, he

selected his exemptions, and they were set aside to him by the defendant. And it is held:

*a*—That there was no sufficient evidence to go to the jury as to a fraud upon the vendor, even though that could have been made available as a defense; that, as between the vendor and the plaintiff, the latter was the owner of the goods, and the only defense available was that the sale was made with intent to defraud creditors; but that the testimony as to the vendor's condition was admissible as bearing upon the question of notice to the purchaser.

*b*—That the testimony as to the selection of the exemptions was clearly inadmissible; it appearing that the transaction occurred several days after the sale, and after the attachment; that the vendor made no claim to the goods, but, after the levy of the attachment, the defendant sought him out, and informed him that the stock was being seized as his property, and that under the statute he was entitled to his exemptions, and that, if he did not select them, it was the defendant's duty to do so for him; that thereupon the vendor selected the goods, and they were turned over to him by the defendant; and that whatever was done, was done at the instance of the defendant.

2. A request by the plaintiff for an instruction that if the jury should find that the purpose of the vendor in making the sale was to raise money to pay his creditors, and not to defraud them, the plaintiff was entitled to a verdict, should have been granted, there being evidence tending to support that theory.

3. The burden of proof of fraud was upon defendant, and plaintiff was not called upon to anticipate such defense, and call all of his witnesses in the first instance; and it was improper for the defendant's counsel, on opening his case to the jury, to state that certain witnesses were, and had been during the proceedings, that afternoon, in the court-room, and had not been called by the plaintiff.

4. The suit having been commenced on the day of the attachment, before an inventory had been made, and before the exemptions were selected by the vendor and set aside to him, plaintiff's contention that, in any event, he was entitled to a verdict for their value, is untenable, as he must rely upon a conversion as of the date when his suit was launched.

Error to Mecosta.    (Palmer, J.)    Submitted on briefs April 4, 1894.    Decided June 2, 1894.

Trover.    Plaintiff brings error.    Reversed.    The facts are stated in the opinion.

*Frank Dumon,* for appellant.

*Sweet & Perkins,* for defendant.

McGRATH, C. J. Plaintiff, claiming to be the purchaser of a stock of goods from one Eighmy, brings trover against the sheriff, who seized the stock under a writ of attachment, at the suit of Swartout & Downs against Eighmy. The latter had a stock of goods, the estimated value of which was from $2,000 to $2,500. He was indebted to various parties in the sum of over $2,000. Within a month prior to the transfer of the property, a number of his checks, varying in amount from $18 to $215, had been dishonored and protested for non-payment, and a number of drafts, varying in amount from $14 to $142, had been returned unpaid. There was testimony tending to show that the purchaser knew of this indebtedness, and of the debtor's anxiety to dispose of his stock.

In view of the purchaser's own version of the negotiations pending the sale; the circumstances attending its conclusion; the anxiety evinced by the debtor to make the sale; the hasty manner in which the business was done; the fact that the estimates as to value of the stock were made in the night-time, and by parties who were there in the interest of the purchaser; that the time was selected by the purchaser; the reasons which he gives for such selection;[1] the fact that, in making these estimates, deductions were made from cost prices; that finally the items were summed up, and aggregated $1,575; that this sum was raised by the purchaser to $1,700, and 50 cents on

---

[1] The purchaser testified that he saw Eighmy about 10 o'clock in the forenoon of the day the purchase was made; that Eighmy asked the witness to come right into the store and buy him out; that witness declined to do so, and said to Eighmy that it was Saturday, and he would have a big run of business that day; that witness would allow him to do all the business he could that day, and towards evening, 6 or 7 o'clock, he could call for witness, and they would go in and invoice, to all of which Eighmy assented.

the dollar named as the purchase price, the sum paid being but $850,—it cannot be said, as a matter of law, that there was no evidence that the sale was made with intent to defraud creditors, or that the circumstances attending it were not sufficient to have put the purchaser upon inquiry. We think, however, that the repeated instruction of the court to the jury that, if the property was the property of Eighmy at the time of the attachment, plaintiff could not recover, was calculated to mislead the jury.

Defendant introduced testimony tending to show that Eighmy was intoxicated at the time the stock was gone over and the sale concluded, and took little part in the matter, and that after the attachment was levied, and after this suit was commenced, Eighmy selected his exemptions, and the same were set aside to him. There was no sufficient evidence to go to the jury as to a fraud upon Eighmy, even though that could have been made available as a defense in this action. As between Eighmy and plaintiff, the latter was the owner of the property, and the only defense available was that the sale to plaintiff was made with intent to defraud creditors.

Complaint is made of the admission of testimony as to Eighmy's condition on the night when the stock was estimated and the sale concluded. We are inclined to think that the testimony was admissible as bearing upon the question of notice to the purchaser.

It is also insisted that the testimony as to the selection of the exemptions was improperly received. The defendant insisted that the purpose of the evidence was to show fraud on Eighmy's part. It was clearly inadmissible. The purchaser was in possession of the goods, and the transaction occurred several days after the sale and the attachment. Eighmy made no claim to the goods, but after the levy the sheriff sought him out, and informed him that

the stock was being seized as his (Eighmy's) property; that, under the statute, he was entitled to his exemptions; that, if he did not make the selections, it was the sheriff's duty to make them,—and thereupon Eighmy selected the goods, and the sheriff turned them over to him. Whatever was done, was done at the instance of the sheriff.

Plaintiff requested the court to instruct the jury that if they should find that Eighmy's purpose in making the sale was to raise money to pay his creditors, and not for the purpose of defrauding them, plaintiff was entitled to a verdict. There was evidence tending to support this theory, and the request should have been granted. It was hardly sufficient for the court to instruct the jury that Eighmy's purpose must have been an honest one. They should have been instructed that such a purpose, if entertained, was a lawful and honest purpose.

Upon the opening of his case to the jury, counsel for defendant made the following announcement:

"We desire to make this statement, and have it appear upon the record: That Moses Bendetson, the plaintiff, Arthur Bendetson, Isaac Netzorg, Porter Eighmy, and Mrs. Eighmy are now, and during these proceedings this afternoon have been, in the court-room, and have not been called as witnesses by the plaintiff; that Porter Eighmy and Mrs. Eighmy have been subpoenaed by the plaintiff, but they have not been produced as witnesses.

"*Counsel for Plaintiff:* Give me an exception, your honor, to counsel's statement, and I wish—it is evidently made for effect before the jury—I wish to have your honor instruct the jury that in a civil case we have the right to call such witnesses as we choose, and they have no right to take any exception to it.

"*The Court:* I will take care of that part of it."

The court did not again refer to the matter. Plaintiff had made out a *prima facie* case. The burden of proof of fraud was upon defendant, and plaintiff was not called upon at that time to anticipate the defense, and call all his witnesses, and the remarks were improper.

Again, the court had properly excluded testimony offered by defendant to show Eighmy's condition on the Monday after the sale, and counsel persisted in offering to prove his condition at that time, as to being "unfit for business," and as to his having made an attempt to commit suicide. These statements were improper, and should not have been permitted.

Plaintiff insists that, in any event, he was entitled to a verdict for the amount of the goods turned over to Eighmy; but this suit was commenced on the very day that the levy was made, before an inventory had been made, and before the exemptions were selected or set aside. Plaintiff in this suit must rely upon a conversion as of the date when this suit was launched.

For the errors referred to, the judgment must be reversed, and a new trial awarded.

The other Justices concurred.