[S. F. No. 8732. In Bank.—September 21, 1920.]

## LOUIS LAFARGUE, Respondent, v. UNITED RAILROADS OF SAN FRANCISCO (a Corporation), Appellant.

[1] NEGLIGENCE—MISCONDUCT OF COUNSEL—DENIAL OF NEW TRIAL—CONCLUSION OF WANT OF PREJUDICE.—Where in an action for personal injuries the trial court denied a motion for a new trial based upon the ground, among others, of misconduct of plaintiff's attorney, it must be deemed to have concluded that no prejudice was suffered by defendant by reason of the alleged misconduct.

[2] ID.—MISCONDUCT OF COUNSEL—QUESTION FOR TRIAL COURT.—The trial judge is in a much better position than an appellate court to determine whether the verdict in a case is probably due wholly or in part to misconduct of counsel and his conclusion in the matter should not be disturbed unless, under all the circumstances appearing, it is plainly wrong.

[3] ID.—EVIDENCE—EXPLANATION OF DISCHARGE FROM HOSPITAL—REBUTTAL OF INFERENCE OF RECOVERY—GOOD FAITH OF COUNSEL.—Where in an action for personal injuries sustained in a collision

with one of defendant's street-cars it was shown that plaintiff some six weeks thereafter was discharged from a hospital where he had been maintained by defendant, and subsequently went to another hospital where he remained for about five months, it cannot be said that there was any intent on the part of plaintiff's counsel to get before the jury matters which he knew were inadmissible in rebutting the possible inference of complete recovery which might be drawn from the fact of discharge by showing that plaintiff was discharged because defendant was not willing to be further responsible for his care.

[4] Id.—Refusal of Further Maintenance at Hospital—Admissibility of Evidence.—In such action, the question whether defendant refused to further maintain plaintiff at the hospital was not a matter material to the issues, and was not admissible, except possibly on cross-examination of witnesses from the hospital who might testify that plaintiff at the time of his discharge was sufficiently recovered to no longer require hospital treatment.

[5] Id.—Misconduct of Juror—Insufficient Ground for New Trial. Misconduct of a juror in asking questions and making statements upon an immaterial matter is not sufficiently prejudicial to require a new trial.

[6] Id.—Evidence—Speed of Car—Lack of Prejudice.—Where in an action for personal injuries sustained in a street-car collision, a witness for defendant testified that the car was moving at a "moderate speed," the defendant was not prejudiced by the fact that the plaintiff on cross-examination of the witness, over the objections of the defendant, developed the fact that the car was one of a line which went farther before reaching its destination and traveled faster than the ordinary cars.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.   E. P. Shortall, Judge. Affirmed.

The facts are stated in the opinion of the court.

Wm. M. Abbott, Wm. M. Cannon and Kingsley Cannon for Appellant.

Daniel A. Ryan for Respondent.

ANGELLOTTI, C. J.—This action is one brought to recover damages for personal injuries alleged to have been sustained by plaintiff in a collision between a wagon driven by him and one of defendant's cars, said collision being alleged to have been due to the negligent operation of the

car by defendant's motorman. There was a trial by jury, which rendered a verdict for plaintiff in the sum of two thousand dollars. Defendant appeals from the judgment entered on such verdict.

Upon all material issues, including that of contributory negligence, there was a substantial conflict in the evidence, and no claim is made that the evidence was insufficient as matter of law to sustain the verdict.

The claim apparently principally relied upon by learned counsel for appellant for a reversal is alleged misconduct on the part of plaintiff's attorney during the trial, by reason of which, it is urged, the defendant's case was prejudiced in the minds of the jurors. Many instances of such alleged misconduct were specified in the affidavits presented on motion for new trial.

Of these the most important is the matter relative to the discharge of plaintiff from St. Luke's Hospital, after being there some six weeks, having been taken to that hospital immediately after the accident. Some two or three weeks after being discharged he went to the French Hospital, where he remained for about five months. The St. Luke's Hospital bill for care and maintenance was being paid by defendant. The extent of his injuries was a matter of serious dispute, concerning which there was a great deal of conflicting testimony. He was claiming disability and suffering covering the whole time up to his leaving the French Hospital, and even later, while defendant was claiming that he had practically recovered from the effect of his injuries when discharged from St. Luke's Hospital. Apparently feeling that the unexplained departure of plaintiff from St. Luke's Hospital might prejudice plaintiff's case on that question, by reason of the inference that might be drawn by jurors from the fact of such discharge that he was then practically recovered, plaintiff's attorney sought to show why he left, and that "it was not because he was cured." He was allowed to show by plaintiff that he (plaintiff) was told to leave by the hospital authorities. He then asked plaintiff who paid the bill there, and this being objected to, said the object was to show "why he was put out of the hospital." The objection was sustained, but the statement of counsel was assigned as misconduct. Nothing further occurred with reference to this matter until some time later, when a medical·witness for

plaintiff was testifying as to the condition of plaintiff and
as to what was shown by certain X-ray pictures, when a
juror intervened with the question, ''Why is it that he was
at the St. Luke's and thrown out and goes to the French
Hospital and was there sixty days?'' The controversy that
immediately ensued includes the principal assignments of
misconduct. Plaintiff's ·attorney said: ''I want to show that
the railroad was paying for him and they wouldn't pay any
longer for him.'' After some further discussion, the court
asked the juror whether there was any subject upon which he
wanted any testimony, and the juror answered: ''Well it
strikes me that the St. Luke's people must have been ter-
ribly off to let him go away without treatment.'' The court
then asked him if he wanted some evidence as to why St.
Luke's Hospital discharged the patient, and he answered
''Yes,'' and the court saying that he thought the request
should be complied with, the medical witness was withdrawn
and the plaintiff recalled for examination on that subject.
Plaintiff's attorney said that the juror came to the con-
clusion that ''they put him out of there [the hospital] be-
cause he was well,'' and asked the juror if that was his idea.
This was assigned as misconduct. Plaintiff's attorney then
said, substantially, that if the juror made a criticism he had
the right to inquire as to what it was, and he had asked the
juror if that (meaning, evidently, that plaintiff was dis-
charged because he· was thought to have recovered) was his
idea, and the juror had shaken his head affirmatively. The
court then said that the juror had asked why the plaintiff
was discharged from the hospital when, as he (plaintiff)
stated, he was not entirely well, and plaintiff's attorney said,
''But the gentleman had his criticism, he says it looked bad
for them,'' and this was assigned as misconduct. An alter-
cation between counsel followed, the court finally saying that
he would permit no further question except that the *juror's*
question might be asked any witness. Plaintiff's attorney
said that was what he was trying to do, and asked plaintiff
''What reason did they give you for sending you out of the
St. Luke's Hospital.'' An objection that this was hearsay
was sustained. Plaintiff's attorney then asked, ''What can
I do?'' and was told by defendant's counsel, ''You can call
the St. Luke's people themselves,'' to which plaintiff's attor-
ney answered, ''Your people, eh?'' This was assigned as

misconduct. He then asked him who paid his bills at the hospital, and an objection to the question was sustained. Plaintiff's attorney then said: "That is all; step down, sir. If you cover it up, it will remain covered up," and this statement was assigned as misconduct. The court admonished the jury to disregard the statement. Plaintiff's attorney said: "I have been trying these cases for some time and I never got into any trouble but I am not going to have it clouded and besmirched if I can bring out the truth," and this statement was assigned as misconduct. The court then said: "I do not care to be repeating to the jury time and time again. Statements of this kind are not evidence and you will not take them as the truth or as any evidence of any fact or the lack of fact or the existence or nonexistence of any fact; they are not evidence at all, gentlemen. They will be eliminated entirely from your mind." Subsequently it was shown, without objection, that the defendant paid to St. Luke's Hospital the bill of the hospital for plaintiff's care and maintenance at that place. There was also given testimony on the part of the surgeon of St. Luke's Hospital substantially to the effect that from his examination of plaintiff and the data concerning him he had concluded that plaintiff did not need any further hospital treatment, and suggested that he go home or to a free hospital where he could rest longer if he desired. This was apparently the general view of the St. Luke's Hospital people at the time of plaintiff's discharge.

The trial court denied a motion for a new trial based upon the ground, among others, of misconduct of plaintiff's attorney. [1] In doing this the court must be deemed to have concluded that no prejudice was suffered by defendant by reason of any of the matters to which we have referred. Conceding some of the statements made by counsel, whatever the provocation thought by him to exist therefor, were improper, we are satisfied that this conclusion of the trial judge should not be disturbed by an appellate court. [2] The trial judge is in a much better position than an appellate court to determine whether the verdict in a case is probably due wholly or in part to such alleged misconduct as we have here, and his conclusion in the matter should not be disturbed unless, under all the circumstances appearing, it is plainly wrong. This, we think, may not fairly be said

here.  **[3]**  We certainly cannot say that there was any
intent on the part of counsel to get before the jury matters
which he *knew* were inadmissible.  It seems to us from the
record that he was acting in perfect good faith upon the
theory that he was entitled to rebut the inference of recovery
which might be drawn by jurors from plaintiff's discharge
from St. Luke's Hospital, by showing that he (plaintiff) was
discharged because defendant was not willing to be further
responsible to the hospital for the cost of plaintiff's care and
maintenance there.  This apparently was the main purpose of
counsel, and in so far as any possible prejudicial effect on the
jury with relation to defendant was concerned, the only basis
of any reasonable claim of possible injury.  **[4]**  We are satis-
fied that the question whether defendant refused to further
maintain plaintiff at the hospital was not a matter material
to the issues being tried, and was not admissible in evidence
except possibly on cross-examination of witnesses from the
hospital who might testify that plaintiff at the time of his
discharge was sufficiently recovered to no longer require hos-
pital treatment.  But we can well see how, under the cir-
cumstances, counsel for plaintiff might have felt that he was
entitled to show that this was the real reason for the dis-
charge, to rebut the possible inference of complete recovery
which might be drawn from the fact of discharge.  As to the
matter of prejudice to the defendant it may well be claimed
that it is difficult to conceive how defendant could be pre-
judiced by a showing that notwithstanding its absolute dis-
claimer of all responsibility for the accident it charitably
bore the cost of plaintiff's maintenance at a hospital until
such time as it was advised by the hospital authorities that
he no longer needed hospital treatment, when it refused to be
further responsible therefor.  Assuming that certain state-
ments of counsel for plaintiff reflected unfavorably upon the
hospital, counsel for defendant urge that counsel for plain-
tiff endeavored to create the impression that defendant
owned the same or had some voice in its management, but
we fail to find any good basis in the record for this claim,
or for a conclusion that any juror could have come to any
such conclusion.  It is true that counsel for plaintiff on one
occasion, when he was advised by counsel for defendant that
he could call "the St. Luke's people themselves," very im-
properly retorted, "Your people, eh?" but this hasty and ill-

advised remark made in the heat of contest and with the apparent desire to have the last word in a conflict with opposing counsel, cannot fairly be said to show any such design or to have created any such impression. At most, it was an improper insinuation that the St. Luke's people were, in this case, friendly to defendant, and might color their testimony accordingly, a very improper insinuation it is true, but one which the trial judge was amply justified in concluding in no way affected the verdict. We have considered all of, the many assignments of misconduct, and we find therein no justification for overruling the decision of the trial judge in denying the motion for a new trial in so far as the same was based thereon.

The motion for a new trial was also based upon the alleged misconduct of the juror who asked the questions and made the statements set forth in our discussion of the question of the misconduct of plaintiff's attorney, the idea being that he thus openly prejudged the case and expressed his criticism to his fellow-jurors. The question and expression of criticism referred to an entirely immaterial matter and the hasty criticism was of the hospital and not of the defendant, induced doubtless by testimony then being given for plaintiff tending to show that when he was discharged from the hospital he was suffering from a fractured rib or ribs. Upon this matter the district court of appeal in deciding this case said:

[5] "We are willing to concede that the juror was guilty of a violation of the instruction of the court and of his duty as a juror in making the statements. But we cannot go with appellant's learned counsel to the extent of holding that the statements necessarily showed a prejudiced mind. Neither can we concede that the incident could have ultimately affected the minds of intelligent jurors, as we must assume the jurors who heard the statements to have been, to the prejudice of defendant's cause. The whole matter was passed on by the trial court on motion for a new trial, and it was warranted in holding that the conclusion of the juror thus hastily reached and expressed, based as it was upon an absolutely irrelevant fact, could not have operated to affect the juror's mind in reaching a verdict."

In this we entirely concur.

Upon the only remaining point made by defendant we are satisfied with what was said by the district court of appeal in its decision, the same being as follows:

"A witness for defendant, who was a passenger on the car which struck plaintiff's wagon, testified that the car was moving at a 'moderate speed.' On cross-examination of this witness plaintiff, over the objections of defendant, developed the fact that the particular car in question was one of a line which went farther before reaching its destination, and traveled faster than the ordinary car that ran on Mission Street. Plaintiff had testified that 'the car was going slowly' at the time his wagon was struck, and there appears to be no contradiction of this statement. Other testimony corroborating plaintiff showed that the car came to a stop within a very few feet after the occurrence of the collision. It is appellant's contention that the only possible effect that evidence as to the speed of the cars at other times and places could have produced on the minds of the jury, was prejudicial, and calculated to create the impression that defendants were habitually reckless and careless in the operation of their cars without regard to human safety. We do not find that the witness fixed any definite rate of speed at which the car in question was proceeding at the time of the accident, or at which any of the cars of defendant usually ran. What he meant by the term 'moderate speed' as applied to the car in question in comparison to the speed of other cars on the same line, was never developed. The trial court allowed the cross-examination on the theory that plaintiff had the right to ascertain what the witness meant when he was allowed to say on direct examination that the car was proceeding at a moderate speed. [6] While the rate of speed at which the car was going was never an issue in the case, either by reason of the pleadings, or from any testimony, and the cross-examination may have been on an immaterial matter, no harm was done. 'In view of the other evidence in the case it does not seem at all probable that the jury were influenced by the testimony.' (*Spear* v. *United Railroads*, 16 Cal. App. 637, 645, [117 Pac. 956].)"

The judgment is affirmed.

Shaw, J., Sloane, J., and Lawlor, J., concurred.

OLNEY, J., WILBUR, J., and LENNON, J., Dissenting.—
We dissent. It seems to us that an entirely false quantity
was injected into the case by plaintiff's counsel, over the
repeated admonitions of the court, and that the false quantity
so introduced was of a character so prejudicial to the de-
fendant as to have prevented the jury from considering
the case fairly upon its real merits. To sustain the verdict
under these circumstances will, it seems to us, have the effect
of encouraging similar conduct in other cases, when it
should be discouraged strongly. Primarily the relief in such
a case should be given by the trial judge by granting a
new trial, and his right to do this should be exercised freely
wherever he feels that the trial has not been fairly had. In
the present case, it seems to us that the trial judge refrained
from exercising this right in a case in which he should have
done so.

Rehearing denied.

Angellotti, C. J., Shaw, J., Lawlor, J., Wilbur, J., and
Sloane, J., concurred.