[S. F. No. 10681. In Bank.—September 28, 1925.]

MICHAEL T. KEENA, Respondent, v. UNITED RAILROADS OF SAN FRANCISCO (a Corporation), Appellant.

[1] NEGLIGENCE—ACTION FOR DEATH—INSTRUCTIONS—APPEAL—PRESUMPTIONS.—In an action for damages for the death of a minor alleged to be due to defendant's negligence, in considering the questions of negligence on appeal it must be presumed that the jury in finding a verdict against the defendant followed the instructions of the trial court to the effect that a verdict should not be rendered against defendant unless the jury found that defendant was guilty of such negligence as proximately caused the injuries to the child, and also found that there was no contributory negligence on the part of either of the parents or of the child; but it is immaterial, so far as the appeal is concerned, whether the jury found defendant guilty of only one or more of the elements of negligence involved, if, in fact, there is sufficient evidence to sustain the verdict on any one of those elements.

[2] ID.—EVIDENCE—CONSTRUCTION OF.—On appeal, in passing upon the question of the insufficiency of the evidence, the evidence must be so construed as to support the verdict to the extent that it is fairly susceptible of such construction, and in all cases of conflict to accept as true that evidence which tends to sustain the verdict, unless it is inherently so improbable as to be palpably false; and where evidence of negligence consists of circumstances from which

---

2. See 2 Cal. Jur. 879.

inferences may be drawn for or against it, it is the province of the jury to determine whether or not there was negligence.

[3] ID.—SUFFICIENCY OF EVIDENCE.—In this action for damages for death alleged to have been caused by defendant's negligence it is held that the evidence is sufficient to support the verdict.

[4] ID.—EXCESSIVE SPEED—EVIDENCE.—In an action for damages for death alleged to be caused by defendant's negligence, where it was contended that the defendant violated a municipal ordinance limiting the speed of street-cars to fifteen miles an hour, but evidence was introduced that the car was traveling nine miles an hour and plaintiff produced two gripmen who testified that a cable car traveling at that rate could be stopped within six feet after applying the brakes, and that inasmuch as the car in question proceeded approximately sixty-five feet after striking the injured child and before it stopped, it must necessarily have been traveling in excess of fifteen miles an hour (one witness estimating the speed at twenty miles an hour and the other at twenty-five miles per hour), such testimony not being refuted by other witnesses, this evidence was sufficient in itself, if believed by the jury, to sustain its verdict upon that issue.

[5] ID.—CONFLICTING EVIDENCE.—In such a case the question whether the testimony of plaintiff's witnesses, the two gripmen, given on direct examination as to the estimated rate of the speed of the street-car should be accepted, or whether the effect thereof was totally destroyed by substantially conflicting evidence, were matters' upon which the jury's determination is controlling.

[6] ID.—FAILURE TO GIVE SIGNALS—NEGATIVE EVIDENCE.—The weight to be given to negative testimony often arises in railroad and other accident cases where it is claimed that signals were not given, and in such cases the question is purely for the jury, and this character of evidence is sufficient to sustain a verdict, even though it conflict with other evidence to the effect that a warning was actually given.

[7] ID.—FAILURE OF GRIPMAN TO LOOK AHEAD.—In such a case the question of whether or not there was a failure on the part of the gripman to look ahead so as to observe what was before him on the street was one for the jury.

[8] ID.—PROXIMATE CAUSE—EVIDENCE.—If in such a case the defendant was guilty of the elements of negligence charged, and it must be assumed to be so in view of a verdict for the plaintiff, the jury was entitled to infer therefrom that such negligence proximately caused the injuries to and the subsequent death of the child and direct evidence of proximate cause was not essential, as the jury's finding might be founded upon an inference.

---

4. Operating street-car at speed in excess of that prescribed by ordinance as negligence or evidence of negligence, note, 8 L. R. A. (N. S.) 1093. See, also, 23 Cal. Jur. 877.

[9] ID.—WITNESSES — FAILURE TO CALL — SUPPRESSION OF EVIDENCE.—
While the rule is well settled that when the evidence tends to prove a
material fact which imposes a liability on a party, and he has
it in his power to produce evidence which from its very nature
must overthrow the case made against him if it is not founded
on fact, and he refuses to produce such evidence, the presumption
arises that the evidence, if produced, would operate to his preju-
dice and support the case of his adversary, but the failure to
call such witness does not amount to a wilful suppression of
evidence.

[10] ID.—MISCONDUCT OF COUNSEL—WHEN PREJUDICIAL.—In an action
for damages for the death of a child alleged to have been caused
by the negligence of the defendant in operating its street-car there
was no duty imposed upon the defendant to call the gripman
as a witness, and the charge of plaintiff's counsel that defendant
was guilty of wilful suppression of evidence in failing to call
the witness, repeatedly made before the jury after the court had
ruled that the subject matter of the inquiry made by plaintiff's
counsel to defendant's counsel as to the witness and his where-
abouts was not proper, was misconduct; and where the evidence
bearing upon the question of the legal responsibility of the de-
fendant for the death of the child was very weak and unsatis-
factory, the judgment for the plaintiff should be reversed on
account of said misconduct of counsel.

(1) 4 C. J., p. 651, n. 53, p. 771, n. 76.    (2) 4 C. J., p. 773, n. 2,
p. 844, n. 72.    (3) 36 Cyc., p. 1597, n. 2, p. 1600, n. 17.    (4) 36
Cyc., p. 1605, n. 29.    (5) 36 Cyc., p. 1618, n. 5.    (6) 23 C. J., p. 47,
n. 26; 36 Cyc., p. 1604, n. 25, p. 1620, n. 15.    (7) 36 Cyc., p. 1477,
n. 9, p. 1601, n. 18, p. 1615, n. 87.    (8) 36 Cyc., p. 1597, n. 2; 38
Cyc., p. 1491, n. 41 New.    (9) 22 C. J., p. 116, n. 92.    (10) 4 C. J.,
p. 959, n. 84, 89.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco. Michael J. Roche,
Judge. Reversed.

The facts are stated in the opinion of the court.

Wm. M. Abbott, K. W. Cannon and Enid Childs for
Appellant.

Daniel A. Ryan for Respondent.

10. See 20 Cal. Jur. 45; 19 R. C. L. 234.

HOUSER, J., *pro tem.*—The opinion of the district court
of appeal (prepared by Mr. Justice Knight) upon the sev-
eral points involved in this appeal, with the exception of
that part hereinafter indicated, is as follows:

"About 2 o'clock, on the afternoon of May 9, 1918, at the
intersection of Castro and Nineteenth Streets, in San Fran-
cisco, plaintiff's infant son, of the age of between four and
five years, was struck by one of defendant's cable cars, and
died as a result of the injuries sustained, for which a jury,
in this action, awarded plaintiff damages. The defendant has
appealed.

"In a previous trial plaintiff recovered a verdict, but
upon appeal the judgment was reversed because the jury
was erroneously instructed upon the subject of contributory
negligence (*Keena* v. *United Railroads,* 57 Cal. App. 124
[207 Pac. 35]).

"Respondent's cause of action is based upon the claim
that, at the time of and immediately preceding the accident
said cable car was being operated at an excessive rate of
speed, in violation of the municipal ordinance limiting the
speed of street-cars to fifteen miles an hour; that there was
a failure to ring a bell or sound a gong as required by said
ordinance; and that the gripman, who was operating said
car, negligently failed to look ahead or observe what was
before him on the street.

"Appellant's first contention, upon this appeal, is that
there is no evidence whatever to establish any one of three
elements of negligence above mentiond, and that even if
there were, the essential and additional element of proximate
cause is entirely missing from respondent's case.

"Nineteenth Street extends in an easterly and westerly
direction. Castro Street intersects and runs at right angles
therewith, and between Twentieth and Nineteenth Streets it
follows a straight course. The cable car in question de-
scended on a five per cent grade down Castro Street and had
reached the northerly crossing of Nineteenth Street when
the child was struck. The accident was witnessed by five
school girls but none of them saw the boy until the car was
within two feet of him; he was then on the strip of pave-
ment, between the double tracks, walking backwards toward
the approaching car. After being struck by the car the
child was dragged a distance of some sixty or seventy feet

before the car was stopped. The parents of the child lived on the south side of Nineteenth Street, a block and a half from the scene of the accident and when the mother last saw him prior to the accident he was playing unattended, on the north side of Nineteenth Street opposite the family home.

[1] "In considering these questions of negligence we must presume that the jury in finding a verdict against the appellant followed the instructions of the trial court to the effect that a verdict should not be rendered against appellant unless the jury found that the appellant was guilty of such negligence as proximately caused the injuries to said child, and also found that there was no contributory negligence on the part of either of the parents of the child or the child. It is immaterial, however, so far as this appeal is concerned, whether the jury found appellant guilty of only one or more of the elements of negligence involved, if, in fact, there be sufficient evidence to sustain the verdict on any one of those elements. [2] Furthermore, in passing upon the question of the insufficiency of the evidence, the evidence must be so construed as to support the verdict to the extent that it is fairly susceptible of such construction, and in all cases of conflict to accept as true that evidence which tends to sustain the verdict, unless it is inherently so improbable as to be palpably false. (*Gett* v. *Pacific Gas & Electric Co.*, 192 Cal. 621 [221 Pac. 376].) And where the evidence of negligence consists of circumstances from which inferences may be drawn for or against it, it is the province of the jury to determine whether or not there was negligence (*Benson* v. *Central P. R. R. Co.*, 98 Cal. 45 [32 Pac. 809, 33 Pac. 206]; *Schneider* v. *Market St. Ry. Co.*, 134 Cal. 482 [66 Pac. 734]). In other words the inferences to be drawn from proved facts must be drawn by the jury and not by the reviewing court (*Alameda Co.* v. *Tieslau*, 44 Cal. App. 332 [186 Pac. 398]).

[3] "We think the record before us reveals evidence, sufficiently substantial to support the verdict; that is, that there is evidence showing circumstances from which the jury might reasonably conclude that appellant was guilty of any one or all of the asserted acts of negligence, and that such negligence was the proximate cause of the injuries to the child.

[4] "As to evidence of the violation of the municipal ordinance which declares a limitation of speed of fifteen miles an hour for street-cars, it was shown that the speed of the cable by which this car was being operated was nine miles an hour, and respondent produced as witnesses two gripmen who testified that a cable car traveling at the usual rate of speed of nine miles an hour could be stopped within six feet after applying the brakes; that inasmuch as the car in question proceeded approximately sixty-five feet after striking the child and before it was stopped, that it must necessarily have been traveling in excess of fifteen miles an hour; one gripman estimated the speed at twenty miles an hour and the other at twenty-five or thirty miles an hour. This testimony was not refuted by other witnesses, neither the members of the car crew nor any one else having given testimony upon this subject; consequently, aside from matters developed upon cross-examination of these two gripmen, theirs was the only evidence in the case bearing upon the question of speed, and was sufficient in itself, if believed by the jury, to sustain its verdict upon that issue (*Schneider* v. *Market Street Ry. Co., supra*). Appellant, however, attacks the sufficiency of said testimony upon the grounds that respondent assumed, in all questions put to said witnesses, that the gripman of this car saw the child when the car was within two feet of him and that the brakes were immediately applied. In this respect appellant claims that neither of those assumptions are warranted by the evidence, and argues that it is not permissible to assume, in the absence of all evidence, that the gripman saw or could have seen the child when the car was within two feet of him, and that even if he did, the suddenness of the emergency may have resulted in the intervention of two or three seconds between the appearance of the child and the application of the brakes; that traveling down a five per cent grade at fifteen miles per hour, or twenty-two feet a second, the car would cover nearly sixty-six feet in the slight interval before the brakes were applied. [5] It is obvious, we think, from the evidence narrated that a substantial conflict is presented on this point, and, therefore, the question of whether the testimony of these two gripmen given on direct examination as to the estimated rate of speed of this car should be accepted or whether the effect thereof was, as appellant argues,

totally destroyed, were matters upon which the jury's determination is controlling.

"Said municipal ordinance further provides that a bell or gong upon the car shall be rung or sounded, when approaching an intersecting street. The five school girls who witnessed the accident were on the sidewalk approximately forty feet from the intersection where, if the ordinance had been complied with, the bell would have been sounded, and they testified that they heard no bell rung or any other warning given by the car. There were no witnesses produced to testify that the bell was rung or the gong sounded. Appellant contends that this negative testimony, even if admissible, cannot be said to rise to the dignity of substantial evidence sufficient, in and of itself, to support a finding that no bell was rung. [6] In answer thereto it is sufficient to say that the weight to be given to negative testimony often arises in railroad and other accident cases where it is claimed that signals were not given, and that in such cases, the question is purely for the jury, and it has frequently been held that negative evidence of this character is sufficient to sustain a verdict (Jones on Evidence [Horwitz], sec. 893, p. 400), even though it conflict with other evidence to the effect that a warning was actually given (*Thompson v. Los Angeles Ry. Co.*, 165 Cal. 748 [134 Pac. 709]).

[7] "The question of whether or not there was a failure on the part of the gripman to look ahead so as to observe what was before him on the street was also one for the jury. The evidence in this regard shows that the accident occurred in the middle of the day, about 2 o'clock in the afternoon, on a straight stretch of street, and where there was no traffic at the time in that immediate vicinity. Under those circumstances we believe the jury might well conclude that the gripman failed in his duty, to observe the conditions of and the objects in the street ahead of him.

"Regarding the issue of proximate cause, appellant contends that even if it be conceded that the respondent has proved any one of the three acts of negligence relied upon, the evidence nevertheless fails to show that any of those acts contributed in any way to the death of respondent's child. There is no merit in this point. [8] Manifestly, if appellant be guilty of the three elements of negligence above mentioned—and in view of the verdict in favor of the re-

spondent, we must assume that it was—the jury was en-titled to infer therefrom that such negligence proximately caused the injuries to and the subsequent death of said child. Direct evidence of proximate cause is not es-sential. The jury's finding may be founded upon an infer-ence (*Szopieray* v. *West Berkeley Express & Draying Co.,* 195 Cal. 106 [227 Pac. 720]), which is defined to be a 'de-duction which the reason of the jury makes from the facts proved.' (Code of Civil Procedure, sec. 1958.) The infer-ence must, of course, be founded 'on a fact legally proved, and on such a deduction from that fact as is warranted by a consideration of the propensities or passions of men, the particular propensities or passions of the person whose act is in question, the course of business, or the course of nature.' (Code of Civil Procedure, sec. 1960; *County of Alameda* v. *Tieslau,* 44 Cal. App. 332 [186 Pac. 398].) The situation here is similar to the one presented in *Szopieray* v. *West Berkeley Express & Draying Co., supra.* There a child was injured in the street, apparently by being run over by some kind of vehicle. The defendant's truck, to which was attached two horses, had been left standing, with the horses unhitched, in violation of the municipal ordi-nance, in the street near the scene of the accident; but there were no eye-witnesses to the accident and the defend-ant denied in its answer that the boy had in fact been in-jured by its horses and truck. Plaintiff's case rested entirely upon circumstantial evidence. The trial court re-fused to allow in evidence the municipal ordinance, which required horses standing on the public streets to be hitched, upon the theory that there was no proof offered to show that a violation of said ordinance had been the proximate cause of the injuries to said child, and a motion for a judgment of nonsuit was granted upon the ground that the plaintiff had failed to prove as against the defendant, any negligent act. Upon appeal, the judgment of nonsuit was reversed. In reference to the circumstantial evidence the court said: 'It is true there is no direct evidence that the truck moved and that such movement was the cause of the injury. In our view, however, there is sufficient indirect evidence tending to show that the proximate cause of the accident was the passing of the truck over the child.' And concerning the inferences which may be drawn from facts

proved the court held: 'While the proof must be sufficient to raise more than a mere conjecture or surmise that the fact is as alleged, yet, where the evidence is such that a rational, well constructed mind can reasonably draw from it the conclusion that the fact exists, it is a sufficient answer to a motion for a nonsuit.' Regarding the admissibility of the municipal ordinance the opinion reads: 'It is claimed in respondent's brief it was not shown that the violation of the ordinance was the proximate cause of the accident. But if the ordinance had been received in evidence *it cannot be said the jury might not have found that the violation thereof contributed to the proximate cause of the injury.*' (Italics ours.) True, in the instant case the question of the sufficiency of the evidence arises upon the appeal from the judgment upon the merits after verdict for plaintiff, and not upon judgment of nonsuit, but the facts and the law come before us in substantially the same manner as if a judgment of nonsuit were involved and consequently the same rule prevails. In conclusion upon this branch of the case it may be further stated that the case at bar is much stronger against this defendant than was the case against that defendant there because here there is no question about the injuries to the child having been inflicted by the defendant.

"The last contention made by appellant is, we think, the most serious one presented. It relates to the alleged misconduct of respondent's counsel. At the close of plaintiff's case, defendant called two witnesses and then rested, without calling the gripman who had operated the cable car at the time of the accident. Respondent's counsel, in the presence of the jury, then inquired of opposing counsel: 'Where is the car man?' to which appellant's counsel replied that he had no idea 'at the present time' and that he was not going to produce him. Respondent's counsel then said: 'He was in court yesterday.' This remark was assigned as misconduct and the jury, upon appellant's request was instructed to disregard the same. Respondent's counsel then asked for and was granted a few minutes recess, after which the following colloquy took place: 'Mr. Ryan: (counsel for respondent). Now, if your Honor please, in reference to the gripman, since he is not called and not here today, and not in court at the present time, I will now con-

sent that Mr. Partridge may read his testimony taken at the
last trial.    Mr. Partridge: I decline to do so, and it is not
admissible, because the motorman is within the jurisdiction;
and I assign the offer to read it as misconduct.    The Court:
Let the jury disregard the remarks of counsel on either side.'
Thereafter, at the afternoon session the following proceed-
ings occurred: 'Mr. Ryan: Well, will you take the stand, Mr.
Partridge. . . . Q. You know Paul Joafus, the motorman?
Mr. Partridge: I object to the question as incompetent, ir-
relevant and immaterial.    Mr. Ryan: It is preliminary, if
your Honor please.    The Court: Objection sustained.    Mr.
Ryan: Q. And do you know that the—this is for the pur-
pose of showing willful suppression, if your Honor please,
of evidence; that is the purpose of it.    It is quite competent,
I think.    The Court: Proceed.    Mr. Ryan: Q. I will ask
you again, with his Honor's permission, if you know Mr.
Paul Joafus, the motorman who had charge of the car that
ran into and killed the Keena boy?    Mr. Partridge: I ob-
ject to that as incompetent, irrelevant and immaterial.    Mr.
Ryan: For the purpose of showing wilful suppression.    Mr.
Partridge: Anybody has a right, if your Honor please, to
produce the witness in court.    Mr. Ryan: I disagree with
you, if your Honor please.    The Court: The Court is pre-
pared to rule.    Objection is sustained.    Mr. Ryan: Yes
your Honor.    Mr. Ryan: Do you know whether or not the
gripman on that car was in the hallway here yesterday?
Mr. Partridge: I object to that as incompetent, irrelevant
and immaterial.    Mr. Ryan: This is for the same purpose,
to show wilful suppression, if your Honor please.    The
Court: Objection sustained.    Mr. Ryan: Did you discharge
the witness?    Mr. Partridge: I object to it upon the ground
that it is incompetent, irrelevant, and immaterial.'    Respond-
ent then called a Mr. Callahan as a witness, and proved by
him that he had seen Joafus that morning, in a restaurant
then being operated by Joafus, at Third and Bryant Streets,
San Francisco.

"We think there can be little doubt of the impropriety
of the course followed by respondent's counsel concerning
the absence of this witness.    Obviously there was no duty
imposed upon appellant to call this or any other particular
witness (*McEwen* v. *New York Life Ins. Co.*, 187 Cal. 144
[201 Pac. 577]).    [9]    While the rule is well settled that

when the evidence tends to prove a material fact which imposes a liability on a party, and he has it in his power to produce evidence which from its very nature must over-throw the case made against him if it is not founded on fact, and he refuses to produce such evidence, the presumption arises that the evidence, if produced, would operate to his prejudice and support the case of his adversary (*Allaggi v. Southern Pac. Co.*, 37 Cal. App. 72 [173 Pac. 1117]), still the failure to call such witness does not amount to a willful suppression of evidence, as was strongly indicated by respondent's counsel in the instant case. Furthermore, counsel's conduct in persistently pursuing the inquiry and making said charges of wilful suppression of evidence, while appellant's counsel was on the witness-stand, after the court had repeatedly ruled that the subject of the inquiry was not proper, is clearly subject to criticism.''

[10] Up to this point in the opinion of the district court of appeal we are in accord, at least, with the conclusions therein reached on the several principles of law as well as with the statement of the facts applicable hereto and in-volved in the action. It is as to the last question only in the case, that is to say, the effect of the misconduct of coun-sel for plaintiff with which this court is in disagreement with the final conclusions expresed thereon by the district court of apeal.

The evidence bearing upon the question of the legal re-sponsibility of the defendant for the death of the infant son of the plaintiff was manifestly very weak and unsatis-factory. The verdict of the jury might well have been in favor of the defendant. Nevertheless, in itself and in the absence of prejudicial error ''the record reveals evidence sufficiently substantial to support the verdict.'' What the verdict would have been without the suggestion of counsel for plaintiff is, of course, impossible of infallible ascertain-ment, but in view of the fact that the decision by the jury, resting, as it did, primarily upon indifferent evidence, may have been and in all probability was largely influenced and possibly absolutely controlled by the innuendoes speaking to the wrongdoing of the defendant in concealing facts which should have been placed by it within the knowledge of the jury, it is clearly unfair and unjust to the defendant that it be mulcted in damages where the misconduct by

counsel for the plaintiff was presumably so large a factor
in the verdict (*Cavanaugh* v. *Township of Riverside,* 136
Mich. 660 [99 N. W. 876]; *Jordan* v. *Austin,* 161 Ala. 585
[50 South. 70]; *Sanger* v. *McDonald,* 82 Ark. 432 [102 S. W.
690]; *Sandberg* v. *Chicago Rys. Co.,* 191 Ill. App. 199; *Gulf
C. & S. F. Ry. Co.* v. *Sullivan* (Tex. Civ. App.), 178 S. W.
615; *Devries* v. *Phillips,* 63 N. C. 53; *Bendetson* v. *Moody,*
100 Mich. 553 [59 N. W. 252]).

In the dissenting opinion of Justices Olney, Wilbur, and
Lennon in the case of *Lafargue* v. *United Railroads,* 183 Cal.
720, 728 [192 Pac. 538, 541], where prejudicial misconduct
was charged to the same attorney who represented plaintiff
and who now represents respondent herein, it was aptly
said: "It seems to us that an entirely false quantity was
injected into the case by plaintiff's counsel, over the re-
peated admonitions of the court, and that the false quantity
so introduced was of a character so prejudicial to the de-
fendant as to have prevented the jury from considering the
case fairly upon its real merits. To sustain the verdict
under these circumstances will, it seems to us, have the
effect of encouraging similar conduct in other cases, when
it should be discouraged strongly."

Judged from a reading of the record herein and taking
into consideration the fact that a recess of several hours
was taken by the court between the announcement by coun-
sel representing the defendant that it rested its case and
the reconvening of the trial court, the conduct of counsel
for plaintiff in repeatedly charging the defendant with a
"wilful suppression of evidence" was not induced by any
possible temperamental emotion of the attorney, or by reason
of hasty action or untoward thoughtlessness on his part, but,
to the contrary, was undoubtedly the result of premeditation
and deliberation.

It will be observed that the misconduct consisted not in
a single utterance of the charge, but rather embraced itera-
tion and reiteration thereof, and included hints, suggestions,
and insinuations to such an extent that by no possibility
could the meaning of counsel have been misinterpreted or
misunderstood by the members of the jury. It is altogether
too evident that the purpose of the accusation that evidence
had been wilfully suppressed by the defendant was none
other than to bolster up a weak case by creating a prejudice

against the defendant in the minds of the members of the jury. Such means of winning a lawsuit cannot be commended or receive recognition and indorsement by this court, instituted and maintained, as it is, on the principle of administering justice.

The judgment is reversed solely on the ground that the misconduct of the attorney for plaintiff prejudicially and materially affected the substantial rights of the defendant and prevented it from having a fair trial.

Waste, J., Richards, J., Lennon, J., and Shenk, J., concurred.

LAWLOR, Acting C. J., Dissenting.—I dissent.

First as to the merits of the assignment of misconduct:

It may be true, as counsel for respondent apparently assumed, that, for strategic purposes, appellant kept the gripman in attendance on the trial during the presentation of respondent's case in chief in order to convey the impression he would be called to testify for appellant, when there was in fact no such intention. But even if this were so, such tactics would not constitute a suppression of evidence under the rule (subds. 6 and 7, sec. 2061, Code Civ. Proc.). The gripman had primary knowledge of the accident and being an employee of appellant perhaps the failure to make him a witness might have been the proper subject of comment in the argument to the jury on behalf of respondent, but not upon the theory of a suppression of evidence. Now, the only testimony offered by appellant was that of the father of the child that there was an 18x18 yard back of the family residence, which testimony was apparently offered to show contributory negligence on the part of respondent in allowing the child to play on the street; and the testimony of appellant's claims agent that the extrajudicial statements of a witness for respondent were contradictory of her testimony. It is plain, therefore, that neither of these items of testimony involved the principle laid down in section 2061 of the Code of Civil Procedure, and it must therefore be conceded that repeatedly charging appellant with having suppressed evidence, in disregard of the adverse rulings on the question, constituted misconduct.

This brings me to the further question whether under the constitutional provision such misconduct demands a reversal of the judgment.

Two juries have found that respondent is entitled to recover. Twice the trial court has held the evidence was sufficient to sustain the verdicts. The district court of appeal and the majority opinion herein have declared the evidence is sufficient as matter of law to support the judgment. Due to an erroneous hypothetical instruction which omitted the issue of contributory negligence the first judgment was reversed. So that neither in the trial court nor on appeal has it ever been held that respondent is not entitled to recover.

It seems to me the probabilities are opposed to the theory that appellant was prejudiced by the misconduct. Both the trial court and the district court of appeal have held that the jury was not influenced against appellant by the incident. It is evident that this court is not in as favorable a position as the trial court to satisfactorily appraise the effect of the misconduct. The prompt action of the trial judge to avoid any injurious result indicates that something more than a perfunctory consideration was given to the misconduct of counsel. What was said in *Lafargue* v. *United Railroads,* 183 Cal. 720, 724 [192 Pac. 538, 540], is to my mind equally pertinent here: "In doing this the court must be deemed to have concluded that no prejudice was suffered by defendant by reason of any of the matters to which we have referred. Conceding some of the statements made by counsel, whatever the provocation thought by him to exist therefor, were improper, we are satisfied that this conclusion of the trial judge should not be disturbed by an appellate court. The trial judge is in a much better position than an appellate court to determine whether the verdict in a case is probably due wholly or in part to such alleged misconduct as we have here, and his conclusion in the matter should not be disturbed unless, under all the circumstances appearing, it is plainly wrong. This, we think, may not fairly be said here."

All presumptions are in favor of the regularity of the action of the court below. Prejudice is no longer presumed from error, but under the constitutional mandate the party complaining must assume the burden of satisfying the ap-

pellate court that to affirm the judgment would work a miscarriage of justice. This appellant has not done.

Formerly any departure from prescribed rules of evidence or procedure might be made the basis of a reversal, but now a miscarriage of justice must be established as a fact and in the process of determining the question the appellate court must examine the record and to some extent weigh the evidence and form conclusions upon its weight—a function heretofore reserved exclusively for the jury. It is not enough to argue that the jury *may* have been influenced by the misconduct to the prejudice of appellant; the showing must be such that an inference of injury finds clear support in the record on appeal. At most, the question here is involved in pure speculation. In my opinion it is more likely that if the persistent misconduct of counsel in opposition to the repeated rulings of the court sustaining appellant's objections influenced the jury at all, respondent and not appellant suffered thereby. I cannot escape the conviction that to hold otherwise is to impugn the jury system itself, for such a conclusion necessarily involves an assumption that the jury ignored the rulings of the court, and accepted the *ipse dixit* of counsel, who misconceived the law or may have resorted to partisan or improper methods in the effort to win his case. The probability is that the action of counsel was reprehended by the jury, for the court admonished them to "pay no attention to the remarks of counsel, and they will not be considered by the jury for any purpose in this case. It is no evidence. Let the jury disregard the remarks of counsel on either side." In its charge the court likewise instructed the jury "to distinguish carefully between the facts testified to by the witnesses and the statements made by the attorneys in their arguments. . . . "

If my estimate of the actual effect of counsel's misconduct is well founded, then a case of genuine hardship is presented. Respondent has lost his child. The accident occurred on May 9, 1918, more than seven years ago. The purpose of the reversal is to discipline counsel and discourage improper conduct in the trial of cases; but, unhappily, the effect is to penalize an innocent litigant. This is the second reversal in the case and a third trial should be avoided.

SEAWELL, J., Dissenting.—I am in accord with the reasoning of Mr. Justice Lawlor which leads to the conclusion that it is not probable that the conduct of counsel as complained of was so powerful in its effect as to overmaster the minds of the members of the jury and produce a result that would not have been produced but for the conduct assigned as prejudicial error. The main opinion seems to concede the question that there would have been an affirmance of the case but for the conduct as set out in the opinion. In the instant case there seems to be no justification for the course taken by respondent's attorney. Appellant was under no legal obligation to call the gripman to the witness-chair. The testimony of the gripman was equally available to both parties and by the failure or refusal of either to exercise the right of making him a witness no room was left for complaint or criticism by either party. The situation did not present a case of suppression of evidence. Where an attorney in the trial of a cause does not exercise his right to examine a certain person as a witness, which person is available to either party, on the theory that his adversary will necessarily be forced to call such witness and he will thereby gain such advantages as the rules of cross-examination afford, and thereafter finds himself disappointed by the failure of his adversary to call such witness, he will not be permitted to indulge in insinuations which may impugn the motives of his adversary who was acting fully within his legal right. Admitting improper conduct on the part of respondent's counsel I am not prepared to say that it worked a miscarriage of justice.

The alleged misconduct of counsel in the trial of causes is frequently before this court for review. The orderly conduct of causes is so completely under the control of the trial judge that it ought not to be, except upon rare occasions, necessary to bring that issue to the attention of this court. In other words, ordinarily, it is within the power of the trial court to completely neutralize, by prompt and vigorous action, the prejudicial effect which it was the intention of the transgressor to produce. The admonition of the trial court, if firmly and promptly made, will, as a rule, so effectually remove all evil effects as to leave little reason to make the conduct of counsel a serious problem here. This should be done in every instance. If in the judgment of the

trial court, however, this was practically impossible of attainment, then, of course, a new trial should have been ordered. But the trial court did not so regard it. The facts of the instant case are such that the judgment of the superior court would have been sustainable under either view of the situation. For the reasons herein suggested I am of the view that the judgment may properly be affirmed.

Rehearing denied.

Lawlor, Acting C. J., and Seawell, J., dissented.