[Civ. No. 9749. First Appellate District, Division One.—March 2, 1936.]

TONY PANDOLFO et al., Respondents, v. MINNIE D. JACKSON et al., Appellants.

Weinmann, Quayle & Berry for Appellants.

Jesse E. Nichols, D. W. Brobst and Elliott Johnson for Respondents.

KNIGHT, J.—An automobile owned by the defendant Morris Goldman Manufacturing Company and driven by the defendant Minnie D. Jackson struck Nicholas Pandolfo while he was walking across the street near the intersection of Seventh and Linden Streets in Oakland, and he died the same day as a result of his injuries. On account of his death his heirs brought this action for damages, and the jury before which it was tried rendered a verdict against both defendants above named (a dismissal having been entered as to the defendant Morris Goldman individually), the amount of which was subsequently reduced as to Morris Goldman Manufacturing Company, the owner of the automobile, to conform to the provisions of section 1714¼ of the Civil Code. From the judgment as finally entered the defendants have appealed, contending as grounds for reversal that counsel for plaintiff was guilty of misconduct, that the trial court erred in making certain inquiries of the jury after the cause was submitted

to it and before it rendered a verdict as to the probability of an agreement and how the jury stood numerically, and abused its discretion in denying defendants' motion for new trial grounded on averments of surprise and newly discovered evidence. We find no merit in any of the points urged.

A number of persons witnessed the accident, and their testimony as to the manner in which it happened was conflicting. One of several witnesses produced by defendants was a man named Gordon, whose testimony plaintiffs sought to impeach by showing that between the date of the accident and the trial of the action he made certain statements to two persons, named Clark and Nickerson, indicating he had a financial motive in giving testimony favorable to the driver of the automobile. Gordon denied having made such statements, and in rebuttal plaintiffs produced Clark and Nickerson as witnesses to contradict him. The former fully substantiated plaintiffs' claim that Gordon told him the day after the coroner's inquest that he, Gordon, "was going to get a good sum of money for testifying in the case". He further testified that Gordon's reputation for truth, honesty and integrity was bad. With respect to Nickerson's testimony, the record shows that the statement Gordon made to him was slightly different from the one about which Gordon had been interrogated on cross-examination. In this regard Gordon was asked in substance if he had not told Nickerson that he was going to buy a second-hand store and was going to get the money for such purpose "from the lady that killed the old man a couple of weeks before . . . for helping her out in the accident"; whereas Nickerson was asked if Gordon had told him "that he was going to get enough money out of testifying for a lady that killed a man, to set himself up in business", and Nickerson replied: "Well, he didn't say exactly who it was, but he said he was going to get enough money to start up in business"—that Gordon did not say that he was going to get the money "out of this case". Thereupon the following occurred: "Mr. Nichols [counsel for plaintiffs]: Now, your Honor, those questions I asked of Mr. Gordon based on conversation with this witness I ask be stricken from the record. There were three or four impeaching questions I asked yesterday as to conversation had with Nickerson and I ask that those be stricken from the record. The Court: Very well. They will be stricken out and the jury will not consider them

for any purpose . . . "; and in its charge to the jury the trial court again admonished the jury that it should not consider as evidence anything that had been stricken out by the court. Evidently at the time the incident occurred counsel for defendants was entirely satisfied with plaintiffs' voluntary action in striking out the evidence relating to Gordon's impeachment by Nickerson, and with the trial court's voluntary admonition to the jury concerning the same because no criticism whatever of counsel's conduct was made at that time, nor afterwards during trial. ■ It was not until the case was decided against defendants and they made their motion for new trial that they first complained. It is well settled that on appeal an objection to the conduct of opposing counsel cannot be entertained where no assignment of error was made at the time the incident occurred or at any time during trial (*Anderson* v. *United Stages, Inc.*, 192 Cal. 250 [219 Pac. 748]; *Ballard* v. *Krug*, 111 Cal. App. 555 [295 Pac. 871]; *Imlay* v. *California Cab Co.*, 124 Cal. App. 68 [11 Pac. (2d) 1116]; ■ furthermore, as said in *Alberts* v. *Lytle*, 1 Cal. App. (2d) 682 [37 Pac. (2d) 705], the trend of recent decisions seems definitely to indicate that when counsel's conduct is urged as one of the grounds of motion for new trial and the motion is decided adversely to the moving party, the trial court's decision will not be disturbed on appeal except where a plain abuse of discretion is shown. Manifestly no such showing has been made in the present case. But entirely aside from the fact that defendants are not in a position to raise the point on appeal, there is nothing in the record, so far as our attention has been called, which would justify the conclusion that counsel for plaintiffs acted in bad faith in introducing and subsequently striking out the Nickerson impeachment testimony or that defendant suffered any prejudice by reason thereof.

■ With respect to the defendants' second point, the record shows that the jury retired about 4 o'clock in the afternoon and after deliberating for approximately three hours without reaching a verdict, was returned into court, and in response to questions put by the court the foreman stated that the jury had not been able to agree upon a verdict. The court then inquired how many ballots had been taken, and how the jury stood numerically, adding that the foreman "need not say for whom". The foreman replied that four ballots had been

taken, that the first ballot stood six to six, and the last eight to four; and he stated further in response to the court's inquiry that he thought there was no probability of an agreement. The court then informed the jury that it could be sent out for dinner if it so desired. The foreman replied, ''I think we are all hungry'', and the other jurors signified their desire to be sent out for dinner; whereupon, after first retiring to the jury room for the purpose of taking another ballot, the jury was taken to dinner by the bailiff. Later that night, about 10 o'clock, it returned a verdict. No protest or objection of any kind was made by defendants' counsel at any time before the verdict was rendered. The point was raised for the first time on motion for new trial, and no claim is made now that the action of the court in thus interrogating the foreman of the jury amounted to coercion. But in support of their contention that it was error for the court to ask the jury any questions at all, they rely on the rule which they claim is followed in the federal jurisdiction. Evidently, however, if such be the rule in the federal jurisdiction, it does not prevail in the state courts; at least no case so holding has been cited; and on the contrary, in the case of *Pisani* v. *Martini*, 132 Cal. App. 269 [22 Pac. (2d) 804], wherein the court asked substantially the same questions, it was expressly held that there was no ground for reversal.

In support of their motion for new trial defendants produced affidavits setting forth what they claimed was newly discovered evidence, the effect and purpose of which was to discredit and impeach the testimony of one of plaintiff's witnesses. It is well established, however, that the granting or refusing of a motion for new trial on the ground of newly discovered evidence is so far within the discretion of the trial court that its action will not be disturbed except for a manifest abuse of discretion (2 Cal. Jur. 906); that newly discovered evidence designed merely to impeach or contradict testimony of adverse witnesses or which has only that effect is not of a character which demands the granting of a new trial; nor will a new trial be granted because of the discovery of new evidence which, if produced, would only tend to impair the credibility of the evidence given or to contradict a witness of the opposing party, or where the only value of the newly discovered testimony is as impeaching evidence (*Sawyer* v. *Nelson*, 115 Cal. App. 490 [1 Pac. (2d) 1068]). More-

over, it has been said in this respect that after defeat a motion for new trial upon the grounds mentioned is regarded with distrust and disfavor, and that such proffered newly discovered evidence is looked upon with suspicion. (*Maddux* v. *Mora*, 99 Cal. App. 695 [279 Pac. 467].) Applying the foregoing rules to the present situation, there is no ground upon which it may be held that the trial court abused its discretion in denying defendants' motion for a new trial.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 1, 1936, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 30, 1936.