[L. A. No. 17653.   In Bank.—February 17, 1941.]

JONES D. WALLING et al., Respondents, v. DAVID K. KIMBALL et al., Appellants.

Bronson, Bronson & McKinnon and Paul C. Dana for Appellants.

Ira J. McDonald, J. K. Lilly and Harvey D. Taylor for Respondents.

CURTIS, J.—Defendants David K. Kimball and Kimball Motor Car Company appeal from a judgment for plaintiffs in an action for damages sustained by the latter in an automobile accident which occurred on November 24, 1935, some twenty-five miles south of Bakersfield on Highway No. 99. The car in which plaintiffs were riding collided with a Cadillac automobile owned by the defendants Kimball and driven by the defendant Noah Hastings. David K. Kimball is the sole owner of Kimball Motor Car Company and does business under that trade name in Huntington Park.

The first trial of the case before a jury resulted in a disagreement. On the second trial the jury returned the following verdicts: (1) In favor of Jones D. Walling for $5,000 as against all defendants; (2) in favor of Grace Walling for $20,000 as against the defendant Hastings and for $5,000 as against the defendants David K. Kimball and Kimball Motor Car Company. Motions for new trial were made by all defendants and denied, whereupon said defendants David K. Kimball and Kimball Motor Car Company appealed from the judgments entered against them.

This appeal is based upon two grounds: prejudicial misconduct of counsel, which prevented appellants from having

a fair trial, and erroneous instructions as to statutory liability. Consideration of the first point—misconduct of counsel—requires a somewhat detailed discussion of the facts and circumstances forming the substance of this charge.

Hastings was represented at both trials by his own counsel, Mr. Bradley, who was paid, however, by appellants. During the course of the first trial Hastings, while on the witness stand, acknowledged Mr. Bradley to be his attorney and stated he would cooperate with said counsel. During cross-examination by appellants' counsel in the course of the first trial and contrary to court order, Hastings disappeared and has never been located by court or counsel. Consequently Hastings did not appear at the instant trial.

From the evidence it appears that Hastings first started to work for the appellants on November 18, 1935, just six days before the accident. Since his work as a general utility man—his principal duties being to wash cars and do janitor work—required him to open the place in the morning, he had a key to the premises. On Saturday, November 23, 1935, he was told to take a Dodge car and go to Long Beach on a specific errand. He did not return until 11:00 o'clock that night, at which time no one was at the garage, which was closed at 9:00 P. M. He left the Dodge on the premises and took the Cadillac for the purpose of making a trip to Bakersfield to see his sister. The accident happened en route to Bakersfield. The next morning when the Cadillac was missed, the matter was reported to the police. That afternoon the appellants received a wire from Hastings advising them of the wreck. Respondents concede that Hastings was not acting within the scope of his employment at the time of the accident, and liability is sought to be imposed upon appellants under subdivisions (a) and (b) of section 402 of the Vehicle Code.

The pivotal point of the entire case on appeal centers on the question of Hastings' permission to drive the Cadillac. The evidence presented in support of this permissive use consists of a portion of the deposition of Hastings, taken by respondents under section 2055 of the Code of Civil Procedure, and the testimony of Jones D. Walling and his investigator concerning certain oral admissions by Hastings made some months after the accident to the effect that he had had such permission. With reference to this matter Hastings testified that he began working for the appellants seven or eight months before

the accident occurred; that he had used their cars for his own personal convenience some forty or forty-five times; that about a week after he went to work David K. Kimball and his brother had told him to take a car whenever he needed it; and that on the first day he went to work there the brother told him he could take a car whenever he wanted it for his own personal use.

This evidence was contradicted by the testimony for appellants and by a portion of the testimony of Hastings himself. In this connection it was conclusively shown that the business operated by the appellants was not opened until September 10, 1935, a little more than two months before the accident; that Hastings did not go to work for them until November 18, 1935; that he worked for and was paid by a firm in Long Beach up to November 15, 1935; and that he later paid the appellants for the damage to the Cadillac.

There was testimony on behalf of the appellants that no general permission to take cars was given, and that Hastings had been allowed to use a car for his own personal purposes only once, November 16, 1935, when he drove to Long Beach, where he had previously been employed, to pick up some of his belongings. When his deposition was taken Hastings was confronted with his signed statement of November 26, 1935, two days after the accident, wherein he said: "I had no permission to use the Cadillac and no one at the Kimball Motor Company knew I had the Cadillac until I reported the accident on Sunday afternoon," and also: "I was acquainted previously with Mr. Vaus (manager of the used car sales department) and I presumed that I could use a car without asking for permission." In his deposition Hastings testified that these statements were true.

The appellants contend that, in view of the weak and unsatisfactory character of the evidence on the most important issue in the case, i. e., whether or not Hastings had permission to use the Cadillac, certain statements made by the respondents' counsel during the reading of Hastings' deposition in the course of the trial amounted to prejudicial misconduct which prevented them from having a fair and unbiased hearing. With reference to this instance, after he had finished reading the direct examination of Hastings, counsel for the respondents objected to the reading of his cross-examination by the appellants' counsel on the ground "that Mr. Dana (appellants' counsel) in this case as a matter of fact is the

representative of Mr. Hastings, and that he is attempting to indulge in this cross-examination to confuse the issues, and that he and Mr. Bradley (Hastings' counsel) are representing these parties jointly, and that Mr. Dana . . . employed Mr. Bradley in this case, and that due to that relationship they are certainly not entitled to put Mr. Hastings on the 'pan' and have their cake and eat it.'' In the ensuing argument, respondents' attorney claimed that his own integrity was challenged by the charge of appellants' attorney that he (respondents' attorney) had broken his word to the court, that his statement was false and untrue and the breach of a stipulation setting forth the facts as to the employment of counsel for Hastings. Finally, the objection to the introduction of the cross-examination was overruled, and respondents' counsel concluded the altercation with the following statement: ''I will later then have to call both Mr. Bradley and Mr. Dana to the stand and find out the true facts of this matter.'' Counsel for the appellants assigned these quoted remarks as misconduct and requested the court to strike them from the record, which was not done. Subsequently, in the course of the hearing on a motion for mistrial, which was denied, counsel for respondents withdrew the accusations thus made, though the jury was not advised of this. Later in its general instructions, the court told the jury not to consider any statements of counsel as evidence.

Appellants urge that the statements so made before the jury contained all of the prejudicial elements in that they injected a false quantity into the case; they were not made in good faith; and coming as they did, during the most important part of the evidence relating to whether or not Hastings had permission to use the automobile in question, their purpose was to mislead the jury by accusing the appellants' counsel of conniving with the attorney for Hastings for the purpose of suppressing the evidence.

The entire controversy and every issue here set up as misconduct were before the trial court upon the motions for new trial and the affidavits filed by respective counsel in support thereof and in opposition thereto. Upon the issues thus raised in the trial court, the court decided that there had been no prejudicial misconduct, and this was a finding of fact which the trial court was justified in making when the motions for new trial were denied, for all of the matters of which complaint is made also took place in the presence of

the trial judge, who was in the best position to observe the demeanor of the parties and to gauge any possible effect it might have had upon the jury. In the leading case on this subject, *LaFargue* v. *United Railroads,* 183 Cal. 720 [192 Pac. 538], this court said at page 724:

"The trial court denied a motion for a new trial based upon the ground, among others, of misconduct of plaintiff's attorney. In doing this the court must be deemed to have concluded that no prejudice was suffered by defendant by reason of any of the matters to which we have referred. Conceding some of the statements made by counsel, whatsoever the provocation thought by him to exist therefor, were improper, we are satisfied that this conclusion of the trial judge should not be disturbed by an appellate court. The trial judge is in a much better position than an appellate court to determine whether the verdict in a case is probably due wholly or in part to such alleged misconduct as we have here, and his conclusion in the matter should not be disturbed unless, under all the circumstances appearing, it is plainly wrong. . . . "

The fundamental logic of the reasoning underlying this basic principle was given equally strong recognition and support in *Roddy* v. *American Smelting & Refining Co.,* 34 Cal. App. (2d) 457 [93 Pac. (2d) 841], *Behrendt* v. *The Times-Mirror Co.,* 30 Cal. App. (2d) 77 [85 Pac. (2d) 949], *Pandolfo* v. *Jackson,* 12 Cal. App. (2d) 232 [55 Pac. (2d) 550], and *Aydlott* v. *Key System Transit Co.,* 104 Cal. App. 621 [286 Pac. 456].

In support of their argument that the action of the respondents' counsel during the course of the instant trial constitutes misconduct sufficiently prejudicial to justify a reversal, appellants cite the cases of *Merralls* v. *Southern Pac. Co.,* 182 Cal. 19 [186 Pac. 778], *Kenna* v. *United Railroads,* 197 Cal. 148 [239 Pac. 1061], *Gackstetter* v. *Market Street Railway Co.,* 130 Cal. App. 316 [20 Pac. (2d) 93], and *Gee* v. *Fong Poy,* 88 Cal. App. 627 [264 Pac. 564]. These cases, however, are readily distinguishable from the instant one. In the *Merralls* case the appeal was by defendant *from an order granting a new trial* to plaintiff, and this court there refused to disturb the finding of the trial court where no abuse of discretion was shown.

In *Kenna* v. *United Railroads, supra,* particular emphasis in the opinion is placed on the fact that "the misconduct consisted not in a single utterance of the charge, but rather

embraced *iteration and reiteration thereof and included hints, suggestions and insinuations* to such an extent that by no possibility could the meaning of counsel have been misinterpreted or misunderstood by the members of the jury.'' (Italics ours.) Likewise, in *Gackstetter* v. *Market Street Railway Co., supra,* and *Gee* v. *Fong Poy, supra,* there was *repeated and persistent misconduct* of such unmistakable character that the general inclination of this court not to disturb the findings of the trial court could not be followed under the circumstances.

In the instant case there is but a solitary assignment of misconduct, which on its face is of such doubtful character that it cannot be said that the trial court, after a full hearing of the facts forming the basis of such charge, erred in denying the motions for new trial herein. Examination of the prejudicial statements to which appellants make objection reveals that they could have conveyed nothing to the jury other than a charge that one of the attorneys for the defendants was attempting to confuse the issues and a declaration that said attorney was in fact the representative of the witness whose deposition was being read, and that the two attorneys were representing the defendants jointly. Apparently, the respondents' counsel acted in good faith in reliance on the admitted employment of Hastings' counsel through arrangement of appellants' counsel, and it seems to us that any prejudicial effect which said statements might have had was removed by the trial court's direction to the jury to disregard entirely the remarks of counsel. Conceding that the statements made by respondents' counsel, whatever may have been the basis of his assertion, were improper, we are satisfied that the conclusion of the trial judge, after consideration of these same facts presented by the conflicting affidavits in the course of the argument on the motions for a new trial, should not be disturbed by this court.

Appellants further contend that the trial court erroneously instructed the jury with respect to the limit of liability upon the owner of an automobile for injuries to one or more persons.

The court read to the jury subdivisions (a) and (b) of section 402 of the Vehicle Code. Subdivision (b) limits the liability of the owner in such a case as this to $5,000 ''for the death of or injury to one person in any one accident,'' and subject to this limitation, to $10,000 ''with respect to the

death of or injury to more than one person in any one accident''. At this point the court admonished the jurors to respect these limits as to appellants, naming them, even though they should award a greater sum as against the driver Hastings. This was followed by some instructions of a general nature, after which the court gave its charge as to the elements of damage to be considered by the jury in connection with each of the respondents. It is the concluding paragraph of this charge on the subject of damages which is attacked as erroneous:

''It has been stipulated that plaintiff, Jones D. Walling, incurred as special damages, for hospital, medical, x-rays and incidental expense for treatment of his own injuries, to-wit, the sum of $500.52, and expense of treatment of the injuries of his wife, Grace Walling, to-wit, the sum of $3,260.55, and as damage to his Chevrolet automobile, to-wit, the sum of $600.20, and that said items of expense were reasonable. If you find the plaintiff, Jones D. Walling, is entitled to recover you may assess said items as his special damages.''

It is contended by appellants that this instruction is erroneous in that it told the jury that the expense of treatment for the injuries to the wife in the sum of $3,260.55 could be recovered by the husband as his special damages. That a husband has a right of action which he is entitled to pursue in his own name for damages to himself by reason of his wife's injuries, such as medical and other expenses incurred by reason of such injuries, is so well settled that the proposition requires no citation of authority, but if authorities are desired, they may be found assembled in 13 California Jurisprudence at page 880, section 69.

It is a little difficult to understand the position of counsel for either of the parties as to the propriety of giving this instruction. Counsel for respondents states that this instruction was proper as to the defendant Hastings. We see no reason to place any such limitation upon this instruction. Respondent Jones D. Walling sued for the exact amount stated in this instruction as special damage sustained by him by reason of his wife's injuries, the items making up this amount being set forth in said instruction. If Hastings' negligence was the proximate cause of the injuries to the two respondents, and he was driving the Cadillac machine with the consent of the appellants, and the respondents were free from negligence, then both Hastings and the appellants were severally liable

for the amount of the special damage sustained by respondent Jones D. Walling as set forth in said instruction. The instruction, therefore, was proper as to each and all of said defendants.

The difficulty we find in this case relates not to the judgment in favor of Mr. Walling, but that in favor of Mrs. Walling. Her action was for general damages. She did not sue for special damages. Therefore, no part of the item of $3,260.55 is or could be held to be included in the judgment for $5,000 rendered in her favor. We have, therefore, this situation: a judgment for $5,000 in favor of the wife and against the appellants for injuries to her and a judgment for $5,000 against the appellants in favor of the husband for injuries sustained by him by reason of Hastings' negligence. If the judgment in favor of the husband included said sum of $3,260.55, then we have judgments aggregating $8,260.55 against the appellants for injuries to Mrs. Walling. But can we hold that the judgment in favor of the husband does include said sum of $3,260.55? It is true that he sued for this amount as his special damage sustained by reason of his wife's injuries. He also sued for $10,000 general damages sustained by him on account of his own injuries. The evidence in our opinion would sustain a verdict in his favor for $5,000 general damages. We will refer to this evidence in more detail later on in this opinion.

Did the jury in fixing the amount of his damage base its award upon his claim for general damages alone, or did it include as a part of said award his claim for special damages? According to appellants' theory the jury did include in its award of $5,000 in favor of Jones D. Walling his claim of $3,260.55 for damages sustained by him by reason of his wife's injuries and, therefore, having also awarded Mrs. Walling $5,000 damages against the appellants for the injuries sustained by her, this judgment in favor of Mrs. Walling against the appellants is excessive to the extent of $3,260.55. We will assume that appellants' construction of said section 402 of the Vehicle Code is correct, and that under said section of the code the combined damages of the husband and wife as against the owner of the machine for an injury to the wife cannot exceed the sum of $5,000. We expressly refrain, however, from deciding this point.

While the jury was instructed that it might include said item of $3,260.55 as special damages in its verdicts in favor

of Jones D. Walling, it was also instructed that it might award him general damages not exceeding the sum of $10,000, with a further instruction that the liability of the appellants was limited to $5,000 for injury to one person. We have already stated that the evidence was sufficient to sustain a judgment in Jones D. Walling's favor for $5,000 general damages. It was, therefore, within the power of the jury to render a verdict in his favor and against the appellants for the sum of $5,000 for general damages alone, or a verdict in that amount made up of both general and special damages.

If the verdict in his favor and against the Kimballs was for general damages alone, then the verdict for $5,000 in his wife's favor and against the appellants was a legal verdict. If, however, the verdict in his favor included special damage sustained by him by reason of his wife's injuries, then the verdict of $5,000 in favor of his wife and against the appellants would be excessive and erroneous to the extent of the special damage included in the judgment in his favor, according to appellants' construction of section 402 of the Vehicle Code. In this state of the case can we presume that the jury included in its verdict in favor of the husband his claim for special damages sustained by reason of his wife's injury, when such an award would have rendered that in favor of the wife excessive and to that extent illegal and erroneous?

It is a well established rule in this state that "an appellate court will never indulge in presumptions to defeat a judgment. It will never presume that an error was committed, or that something was done or omitted to be done which constitutes error. On the contrary, every intendment and presumption not contradicted by or inconsistent with the record on appeal must be indulged in favor of the orders and judgments of superior courts." (2 Cal. Jur. 852.)

"It is well settled that all presumptions and intendments are in favor of supporting the judgment or order appealed from, and that an appellant has the burden of showing reversible error, and that, in the absence of such showing, the judgment or order appealed from will be affirmed. (Citing authorities.)" (*Hibernia Sav. etc. Soc.* v. *Ellis Estate Co.*, 132 Cal. App. 408, 412 [22 Pac. (2d) 806].)

Under the requirements of this rule the presumption is that the verdict in favor of Jones D. Walling was for general damages alone. To presume that it included his special

damages, sustained by reason of his wife's injuries, would render improper and illegal the verdict of Mrs. Walling to the extent of the special damages included in the verdict in favor of Mr. Walling. This would be contrary to the rule just stated.

An incident which took place after the case had been submitted to the jury sheds some light upon the intentions of the jury in rendering the verdict in favor of Mr. Walling. After the jury had retired, it returned into court and the foreman made the following statement and inquiry to the court: "There is a question in regard to the expenses to which Mr. Walling was,—had to pay the doctor bills, so forth. Is that assessable in addition to the $5,000.00?" To which the court replied: "No, except for property damages that is all. The property damage not to exceed, the evidence shows $600.20."

By the "doctor bills, so forth" the foreman must have intended to refer in part at least to the item of $3,260.55, which Mr. Walling had paid out as "expense of treatment of injuries to his wife". Evidently the jury wanted to know whether it could award this amount to Mr. Walling in addition to his general damages of $5,000. The court informed the foreman that this could not be done. The jury then retired and found a verdict for $5,000 in favor of Mr. Walling. The only reasonable inference to be drawn from the action of the jury after making this inquiry of the court is that the jury designedly, in compliance with the information received from the court, awarded Mr. Walling a verdict for $5,000 exclusively as general damages. As we have stated before, the evidence was amply sufficient to sustain such an award. It shows that he was seriously injured about the head and back; his upper jaw was broken; he lost five teeth; he received a concussion of the brain; he was disabled for nine months; and was thereafter required to wear for two and a half years a special belt to hold his spine in place; his eyes, mind and memory were affected; he had not entirely recovered at the time of the trial more than three and one-half years after the accident, at which time he could not lift any appreciable weight and still suffered pain; he was required to wear a dental plate.

The judgment in our opinion should be affirmed, and it is so ordered.

Shenk, J., Traynor, J., Carter, J., and Gibson, C. J., concurred.