Filed 8/28/23  In re D.B. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re D.B., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.Q.,<br><br>Defendant and Appellant. | E080703<br><br>(Super.Ct.No. RIJ1400967)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Michael J. Rushton, Judge.  Reversed and remanded with directions.

Emily Uhre, under appointment by the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, and Teresa K.B. Beecham and Julie K. Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

J.Q. (mother) appeals from an order terminating parental rights to her youngest child. Her sole appellate contention is that the juvenile court and the Department of Public Social Services (Department) failed to carry out their initial duty under state law implementing the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) to ask extended family members about the child's possible Indian ancestry.

As the Department does not dispute, it did not inquire of extended family members. It responds, however, that because the child was removed from the parents pursuant to a protective custody warrant, it had no duty to inquire of extended family members. Although there are three published opinions by various panels of this court supporting the Department's position, there is a fourth rejecting it. We find the fourth opinion most persuasive. Therefore, we will conditionally reverse.

I

STATEMENT OF THE CASE

The mother and T.B. (father) have three children together: J.Q. (J.), R.Q. (R.), and D.B. (D.) (collectively children).[1] The mother also had two older children, but her parental rights to them had been terminated due to domestic violence.

In June 2021, while drinking, the parents engaged in a physical fight in the presence of R. and D. The father was arrested. After the police left, the mother left with D. She put D. in a car seat but did not strap her in; D. fell out of the car seat.

_____

[1] This appeal concerns only the mother and D. The father is not a party, and J. and R. are not involved.

The mother admitted abusing alcohol. She also tested positive for methamphetamine. The social worker found a small bruise on D.'s forehead, which the mother could not explain. (After the dependency was filed, she admitted that it was from falling out of the car seat.) The father had cognitive deficits and a history of schizophrenia.

Accordingly, the Department detained the children and filed a dependency petition concerning them. The children were placed in foster care. Initially, J. was placed separately from R. and D.; soon, however, R. was placed with J., so that only D. was placed separately. All three children were found to be developmentally delayed, although they improved somewhat while in foster care.

In September 2021, at the jurisdictional/dispositional hearing, the juvenile court sustained jurisdiction based on failure to protect (Welf. & Inst. Code, § 300, subd. (b))[2] and, as to J. and R. only, abuse of a sibling (*id*., subd. (j)). It formally removed the children from the parents' custody. It ordered reunification services for the mother but not for the father.

The mother was "in and out of custody, and when not in custody tested positive for illegal substances."

In April 2022, at the six-month review hearing, the juvenile court terminated reunification services and set a section 366.26 hearing.

---

**2** All further statutory references are to the Welfare & Institutions Code, unless otherwise indicated.

In December 2022, at the section 366.26 hearing, the juvenile court terminated parental rights as to D. As to J. and R., it continued the hearing. The mother appeals.

II

THE DUTY TO INQUIRE OF EXTENDED FAMILY MEMBERS

The mother contends that the juvenile court and the Department failed to carry out their initial duty of inquiry under state law implementing ICWA.

A.  *Additional Factual and Procedural Background.*

The parents consistently denied any Indian ancestry. Before the detention, a social worker interviewed the paternal grandfather and the maternal grandmother but evidently did not make any ICWA inquiry of them.

According to the petition, the children were detained on June 12, 2021 at 8:00 a.m. At 11:54 a.m., the juvenile court issued protective custody warrants for the children. According to the detention report, at 3:29 p.m., the children were placed in protective custody. At the detention hearing, the juvenile court recalled and quashed the warrants.

The maternal grandmother and grandfather attended the detention hearing as well as both the initial and the continued jurisdictional/dispositional hearing. The juvenile court at no time conducted any ICWA inquiry of the parents or the maternal grandparents.

After the detention hearing, a social worker reinterviewed the maternal grandmother. One report mentions the name of the mother's brother.[3] However, there is no indication that the Department ever made any ICWA inquiry to any relatives. Rather, the Department repeatedly reported that "no new information" had been "provided" (or "received") indicating that the family had Indian ancestry.

At the detention hearing, the jurisdictional/dispositional hearing, and the six-month review hearing, the juvenile court found that the Department had conducted "a sufficient inquiry regarding whether the child(ren) may have Indian ancestry" and that ICWA did not apply.

B.    *Applicable Legal Principles*.

"An 'Indian child' is an unmarried person under 18 years of age who is (1) a member of a federally recognized Indian tribe or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. [Citations.]" (*In re Adrian L.* (2022) 86 Cal.App.5th 342, 349, fn. 9; accord, 25 U.S.C. § 1903(4), (8); 25 C.F.R. § 23.2; § 224.1, subds. (a), (b).)

"The court [and the] county welfare department . . . have an affirmative and continuing duty to inquire whether a child for whom a petition . . . has been filed[] is or may be an Indian child." (§ 224.2, subd. (a).) "'Th[is] continuing duty . . . "can be

---

[3]    There are also mentions of a maternal aunt, a paternal aunt, and a paternal great-aunt.

Some of these may have been mistaken. For example, the maternal aunt and/or paternal aunt may actually have been the mother's brother's girlfriend.

divided into three phases: the initial duty to inquire, the duty of further inquiry, and the duty to provide formal ICWA notice.'" [Citations.]" (*In re Antonio R.* (2022) 76 Cal.App.5th 421, 429.)

Initially, under federal law, the juvenile court "must ask each participant" in a dependency "at the commencement of the proceeding" "whether the participant knows or has reason to know that the child is an Indian child." (25 C.F.R. § 23.107(a).)

By state statute: "(a) The court, county welfare department, and the probation department have an affirmative and continuing duty to inquire whether a child . . . is or may be an Indian child. The duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child.

"(b) If a child is placed into the temporary custody of a county welfare department pursuant to Section 306 or county probation department pursuant to Section 307, the county welfare department or county probation department has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, . . . [and] *extended family members* . . . whether the child is, or may be, an Indian child . . . .

"(c) At the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child." (§ 224.2, italics added.)

6

In addition, by state court rule, "[t]he party seeking a foster-care placement [or] termination of parental rights . . .  must ask the child, . . . the parents, . . . [and] *extended family members* . . . whether the child is or may be an Indian child . . . ." (Cal. Rules of Court, rule 5.481(a)(1), italics added.)  "The petitioner must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status . . . ." (Cal. Rules of Court, rule 5.481(a)(5).)

Then, "[i]f the court [or] social worker . . . has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child, the court [or] social worker . . . shall make further inquiry regarding the possible Indian status of the child." (§ 224.2, subd. (e).)  "[T]he requisite 'further inquiry' 'includes: (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs and State Department of Social Services; and (3) contacting tribes the child may be affiliated with, and anyone else, that might have information regarding the child's membership or eligibility in a tribe.' [Citation.]" (*In re Austin J.* (2020) 47 Cal.App.5th 870, 883; see also § 224.2, subd. (e)(2).)

Finally, in a dependency that could result in a foster care placement or termination of parental rights, if "[t]here is reason to know a child involved in a proceeding is an Indian child," notice of the proceeding must be given to the relevant tribe or tribes. (25

7

U.S.C. § 1912(a); 25 C.F.R. §§ 23.11(a), 23.111; § 224.3, subd. (a); Cal. Rules of Court, rule 5.481(c)(1).)

"If the court makes a finding that proper and adequate further inquiry and due diligence . . . have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings." (§ 224.2, subd. (i)(2).) "In the absence of any evidence the [agency] complied with its section 224.2, subdivision (b) duty to inquire of extended family members, [a] juvenile court's finding that ICWA does not apply is error. [Citation.]" (*In re M.M.* (2022) 81 Cal.App.5th 61, 71, review granted Oct. 12, 2022, S276099.)

"[T]he parent's failure to object in the juvenile court to deficiencies in the investigation or noticing does not preclude the parent from raising the issue for the first time on appeal from an order entered at any hearing in which the juvenile court determined that ICWA was satisfied or does not apply [citations]." (*In re K.R.* (2018) 20 Cal.App.5th 701, 706.)

"Because ICWA imposes on the juvenile court a continuing duty to inquire whether the child is an Indian child, . . . the parent may a challenge a finding of ICWA's inapplicability in an appeal from [a] subsequent order, even if she did not raise such a challenge in an appeal from the initial order." (*In re Isaiah W.* (2016) 1 Cal.5th 1, 6.)

Here, neither the juvenile court nor the Department made any inquiry of extended family members at all (or if the Department did, it failed to document it).

The Department argues, however, that the children were taken into custody pursuant to a warrant; that custody pursuant to a warrant is not "pursuant to Section 306," within the meaning of section 224.2, subdivision (b); and therefore that there was no duty to inquire of extended family members.

Preliminarily, it is not clear whether the children were, in fact, taken into custody pursuant to warrants. They were detained, without a warrant, at 8:00 a.m. Warrants did not issue until 11:54 a.m. The detention report recites that the children were placed in protective custody at 3:29 p.m. However, the detention meant they were *already* in protective custody. Moreover, the fact that the juvenile court recalled and quashed the warrants suggests that they were never executed. Because the issue was not raised below, the juvenile court had no occasion to make a factual finding on this question.

"'It is well settled that all presumptions and intendments are in favor of supporting the judgment or order appealed from, and that an appellant has the burden of showing reversible error, and that, in the absence of such showing, the judgment or order appealed from will be affirmed. [Citations.]' [Citation.]" (*Walling v. Kimball* (1941) 17 Cal.2d 364, 373.) If the Department is correct — if there is no duty to inquire of extended family members when a detention is pursuant to warrant — then the mother, as appellant, has the burden of showing that the detention was *not* pursuant to warrant. On this record, she cannot do so, so we would affirm. However, if the Department is incorrect, we must reverse. Hence, the question of whether a warrant is relevant is crucial.

9

The first panel of this court that considered this question agreed with the Department's position; it held that there is no duty to inquire of extended family members where the child was initially removed pursuant to a protective custody warrant under Section 340. (*In re Robert F.* (2023) 90 Cal.App.5th 492, 500-503 (*Robert F.*), review granted, Jul. 26, 2023, S279743.) Thereafter, two of the same panel members, plus a third, agreed with *Robert F.* (*In re Ja.O.* (2023) 91 Cal.App.5th 672, 677–681 (*Ja.O.*), review granted Jul 26, 2023, S280572.)

However, *In re Delila D.* (2023) 93 Cal.App.5th 953 (*Delila D.*), pet. for rev. filed Aug. 15, 2023, two panel members who had not participated in either *Robert F.* or *Ja.O.* held, to the contrary, that there is a duty to inquire of extended family members regardless of whether the child was removed pursuant to a warrant. (*Delila D., supra*, at pp. 962, 964–976.) A third panel member, who had concurred in *Robert F.*, understandably dissented. (*Delila D., supra*, at pp. 977–981 [dis. opn. of Miller, J.].)

Finally, for completeness we note that just days ago, in in *In re Andres R.* (2023) ___ Cal.App.5th ___, ___ [2023 Cal. App. LEXIS 638] (*Andres R.*), the original *Robert F.* panel reaffirmed and expanded on its previous holding.

We agree with *Delila D.*, for the reasons it stated, which we adopt; we disagree with *Robert F.*, *Ja.O.*, and *Andres R.* We see no point to elaborating on those reasons. As noted, the Supreme Court has already granted review in *Robert F.* and *Ja.O.*; it is nearly as certain that tomorrow's sunrise that it will also grant review in *Delila D.*, *Andres R.*, and this case. All we can do is follow the law, as best we see it, in

provisionally deciding this appeal, while leaving the ultimate decision up to the Supreme Court.

In light of our holding, once D. was removed from parental custody and placed temporarily with the Department, regardless of whether she was removed pursuant to warrant, the duty to inquire of extended family members under section 224.2, subdivision (b) arose.  This duty was not performed.  Instead, the juvenile court repeatedly relied on an inquiry directed solely at the parents.  In this, the juvenile court erred.

Because the duty of initial inquiry was not discharged, we must conditionally reverse and remand for a further inquiry.

### III

### DISPOSITION

The order terminating parental rights is reversed, on the following conditions.  On remand, the juvenile court must order the Department to carry out its duty of initial inquiry (§ 224.2, subd. (b)) and, if applicable, its duty of further inquiry (§ 224.2, subd. (e)) and its duty to provide notice to the pertinent tribes (25 U.S.C. § 1912(a); § 224.3).  Once the Department has done so, the juvenile court must determine whether ICWA applies.  If it determines that ICWA does not apply, then it must reinstate the order terminating parental rights.  If it determines that ICWA does apply, it must hold a new

11

section 366.26 hearing in conformity with ICWA and related state law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

McKINSTER

J.

RAPHAEL

J.